UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMERICAN TAX FUNDING, LLC,

                  Plaintiff,

   -v-                                  5:12-CV-290

CITY OF SYRACUSE,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

CAMARDO LAW FIRM P.C.           JOSEPH A. CAMARDO, JR., ESQ.
Attorneys for Plaintiff             JUSTIN T. HUFFMAN, ESQ.
127 Genesee Street
Auburn, NY  13021

HARRIS BEACH PLLC               BRENDAN M. PALFREYMAN, ESQ.
Attorneys for Defendant          LAUREN H. SEITER, ESQ.
333 West Washington Street      DAVID M. CAPRIOTTI, ESQ.
Suite 200
Syracuse, NY  13202

CITY OF SYRACUSE LAW DEPARTMENT    SHANNON M. JONES, ESQ.
Attorneys for Defendant
233 East Washington Street
300 City Hall
Syracuse, NY  13202


DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION and ORDER**</u>

## I. <u>INTRODUCTION</u>

On February 16, 2012, plaintiff American Tax Funding, LLC ("ATF"), a Florida corporation authorized to do business in New York, filed this diversity action against the defendant City of Syracuse ("the City").  This matter relates to two contracts that the parties entered into for the purchase and sale of delinquent tax liens in the City.  ATF brings claims pursuant to New York state law for breach of contract, indemnification, and unjust enrichment.  It also seeks a declaratory judgment and an accounting of all payments received by the City for unsatisfied tax liens and/or subsequent liens on related properties. ATF alleges damages in excess of six million dollars.

The City filed an answer on March 15, 2012.  The City also asserts a counterclaim against ATF for breach of contract, alleging damages of over one million dollars.  ATF answered the City's counterclaim on March 29, 2012.  Thereafter, the parties engaged in discovery and settlement discussions.

On December 3, 2013, the City filed a motion for judgment on the pleadings and for partial summary judgment.  Specifically, the City seeks dismissal of ATF's indemnification claim (to the extent it seeks attorneys' fees) and the unjust enrichment claim pursuant to Federal Rule of Civil Procedure 12(c) ("Rule __").  The City also seeks partial summary judgment on certain aspects of ATF's breach of contract claim pursuant to Rule 56.  ATF has responded in opposition and filed a cross-motion for partial summary judgment on certain aspects of its breach of contract claim.  Both motions have been fully briefed.  Oral argument was heard on January 31, 2014, in Utica, New York.  Decision was reserved.

## II.  FACTUAL BACKGROUND

ATF is a private company that specializes in purchasing liens from municipalities across the nation.  It then seeks to collect on and profit from the outstanding liens.  ATF and the City entered into two contracts, dated August 2, 2006, and January 31, 2008.  Compl., Ex. A, ECF No. 1-1, 32–59[1] ("2006 Contract"), 61–87 ("2008 Contract").[2]  Pursuant to these contracts, the City agreed to sell certain delinquent tax liens to ATF at a discount.  In turn, ATF secured the right to collect and, if necessary, foreclose on property associated with those liens as well as purchase subsequent liens.  Combined, the contracts contemplate over twelve million dollars in tax liens.  Each contract contains a reciprocal indemnification clause.

If a sold tax lien qualifies as a "removed lien" as that term is defined in the contracts, that lien is removed from the list of liens purchased by ATF, and the City must compensate ATF with a refund or replacement lien(s).  As pertinent here, a lien qualifies as a removed lien if the property "becomes subject to a condemnation action or demolition lien filed by the City, that materially impairs market value at any time prior to, on, or six months after" ATF purchased the lien relative to that property.  2006 Contract 36; 2008 Contract 65.

ATF alleges that many of the tax liens it purchased turned out to be flawed and/or constitute removed liens, thereby triggering the City's obligation to compensate ATF.  It further claims that the City has impaired its ability to collect on liens, elevated the City's interest in unpaid water bills on certain properties to a "super-priority" status over ATF's

---

[1]  The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used throughout the order for citations to specific pages of documents in the record.

[2]  In its opposition papers, ATF provides information regarding the parties' contract negotiations.  The City asserts that consideration of such parol evidence is improper.  As this evidence is irrelevant to the contract disputes at issue, which will be resolved without reference thereto, such will not be recited or discussed.

interest in the tax liens on those properties, diverted lien payments away from ATF, and prevented ATF from purchasing subsequent liens. On December 30, 2010, ATF served a verified claim upon the City seeking payment for alleged breach of the contracts. See Compl., Ex. A, ECF No. 1-1, 1–30. The City served ATF with a notice of default on January 3, 2011, similarly alleging breach of the contracts.

## III. DISCUSSION

The City seeks dismissal of ATF's indemnification and unjust enrichment claims pursuant to Rule 12(c). The City's Rule 56 motion for partial summary judgment, and ATF's cross-motion for partial summary judgment, pertains to the breach of contract claims only.

### A. The City's Motion for Judgment on the Pleadings

### 1. Legal Standard

When analyzing a Rule 12(c) motion, a court applies the same standard as that applicable to a motion brought pursuant to Rule 12(b)(6). Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994); Wynn v. Uhler, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.). To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where a party has failed to provide some basis for the allegations that support the elements of its claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

- 4 -

When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the pleader's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Finally, a district court may consider documents attached to the pleading as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

## 2. Indemnification and Attorneys' Fees

The City argues that ATF may not seek reimbursement for attorneys' fees incurred in the prosecution of this action because the indemnification clause in the contracts does not specifically authorize such fees. The indemnification clause states, in pertinent part:

> The City agrees, to indemnify and hold harmless [ATF] . . . from and against any and all claims, losses, deficiencies, liabilities, obligations, damages, penalties, punitive damages, costs and expenses, whether or not resulting from third party claims, suffered by [ATF] which arise out of or result from: (i) any proven unlawful acts of the City (including its agents and assigns) to collect amounts secured by tax liens on Related Properties, (ii) the institution of foreclosure of any liens secured by Related Properties or any other collection action taken by the City in violation of applicable law or of any provisions of this Agreement and (iii) any material inaccuracy or misrepresentation in or breach of any of the representations, warranties, covenants or agreements made by the City in this Agreement . . . .

2006 Contract 52; 2008 Contract 81.

The parties dispute the meaning and impact of this provision vis-a-vis the availability of attorneys' fees. When the interpretation and proper application of an indemnification clause is disputed, the intent of the parties—gleaned from the chosen contract language and conduct of the parties—guides. See Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt., 71 F.3d 1053, 1058–59 (2d Cir. 1995); Alland v. Consumers Credit Corp., 476 F.2d 951, 954 (2d Cir. 1973); Perez v. Reade, No. 07–CV–5072, 2011 WL 96837, at *3 (E.D.N.Y. Jan. 11,

2011) ("A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances." (internal quotation marks omitted)).

"Under the American Rule, it is well established that attorneys' fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (quoting Summit Valley Indus., Inc. v. United Bhd. of Carpenters & Joiners, 456 U.S. 717, 721 (1982)). Courts have been cautioned that "while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create." Id. at 75 (internal quotation marks omitted). Courts should not infer a party's intent to disregard "the well-understood rule that parties are responsible for their own attorneys' fees" unless that intent "is *unmistakably clear* from the language of the promise." Id. (internal quotation marks and alteration omitted).

As an initial matter, it is not clear that the indemnification clause was intended to apply to lawsuits between the parties. Indeed, the clause does not specifically address inter-party litigation. The phrase "whether or not resulting from third party claims" can be read a number of ways. It arguably suggests that the indemnification clause contemplates any litigation, inter-party as well as third-party. On the other hand, it could be interpreted to include only third-party litigation and other non-litigation matters triggered by any of the three events detailed thereafter in the clause. Absent a clear indication that the parties intended this clause to apply to inter-party litigation, indemnification will not be awarded. See Luna v. Am. Airlines, 769 F. Supp. 2d 231, 245 (S.D.N.Y. 2011) ("[I]f third-party claims were possible at the time of contracting and the contractual language did not evidence the parties' intent

regarding the indemnification of attorney's fees incurred in suits between them, the courts have refused to award such expenses as indemnification."); Coastal Power Int'l, Ltd. v. Transcon. Capital Corp., 10 F. Supp. 2d 345, 371 (S.D.N.Y. 1998) (although indemnification clause could be interpreted to cover legal costs incurred by the contracting parties, absent "language clearly evidencing an intention that the loser in a suit for breach of the Purchase Agreement was intended to pay the winner's attorneys' fees," such fees are not indemnified), aff'd, 182 F.3d 163, 165 (2d Cir. 1999).

Even if the indemnification clause was intended to apply to inter-party litigation, it does not necessarily entitle ATF to recover attorneys' fees. This determination instead turns on whether the phrase "claims, losses, deficiencies, liabilities, obligations, damages, penalties, punitive damages, costs and expenses" should be read to include attorneys' fees incurred by ATF in bringing this action to remedy the City's alleged breach of the contracts.

The parties' inclusion of the term "attorneys' fees" in other parts of the contracts suggests its omission from the indemnification clause was intentional. For example, in Article IV, the contracts provide that ATF shall pay over to the City "all collections (net of collection costs and attorneys' fees)" related to a removed lien that has been substituted out. 2006 Contract 40; 2008 Contract 68–69. Article XI of the contracts guides the order in which collection proceeds shall be applied to outstanding taxes. These proceeds include "payments of taxes, interest, fees and expenses of collection (inclusive of legal costs, attorney's fees, allowance and disbursements) from taxpayers." 2006 Contract 49; 2008 Contract 77–78.

Further, the term "costs" does not unmistakably include attorneys' fees. See Alland, 476 F.2d at 956 ("We fully agree with appellee that no ambiguity exists as to what is

commonly meant by the term 'costs' as that word is used by courts, legislatures, and attorneys, and that the term does not normally refer to counsel fees."); see also Braspetro, 369 F.3d at 77 ("it is not unmistakably clear that the use of the term 'legal costs'" was intended to include attorneys' fees).[3]

Accordingly, the City's motion for judgment on the pleadings with respect to ATF's indemnification claim will be granted to the extent ATF seeks attorneys' fees pursuant to the indemnification clause.[4]

### 3. **Unjust Enrichment**

The City next argues that the existence of the written contracts precludes ATF's claim for unjust enrichment, which the City asserts is based on the same factual allegations as the breach of contract claim. ATF points out that it has pleaded this claim in the alternative, and asserts that it may elect to rescind the contracts and seek restitution in quasi-contract for unjust enrichment up until the time of trial.[5]

The existence of a valid written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for unjust enrichment for events arising out of that subject matter. Simkin v. Blank, 19 N.Y.3d 46, 55 (2012). Indeed, "[a] 'quasi-contract' only applies in the absence of an express agreement, and is not really a contract at all, but

---

[3] The Braspetro Court explored the definition of "legal costs" in three standard dictionaries, noted that only one of the dictionaries included attorneys' fees in the definition, and concluded that "these sources bring us no closer to resolving the disputed language." Id.

[4] Similarly, to the extent the City seeks to recover attorneys' fees related to its counterclaim in this action, such is also be barred. Indeed, the City has indicated its intent to "voluntarily dismiss that portion of its counterclaim" if ATF's claim for attorneys' fees is dismissed. Def.'s Mem. 15.

[5] In its opposition, ATF also claims that this cause of action involves matters outside the contracts. This argument is without merit. In the complaint, ATF cites to specific contract provisions and explicitly alleges that the City's failure to comply with its contractual obligations have caused its damages.

rather a legal obligation imposed in order to prevent a party's unjust enrichment."  Clark–

Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987).  A party may timely

rescind the written contract, if warranted, and seek recovery in quasi-contract.  Id. at 389.

However, a party may not seek damages in quasi-contract where it "has fully performed on a

valid written agreement, the existence of which is undisputed, and the scope of which clearly

covers the dispute between the parties."  Id.

       The relationship between the City and ATF is defined by two detailed, written

contracts.  Further, ATF's unjust enrichment and breach of contract claims arise from the

same factual allegations and seek the exact same amount of damages.  In the complaint,

ATF invokes the terms of the contracts and alleges that the City has failed to perform its

contractual obligations pursuant to those terms.  Compl. ¶¶ 41–44.  It specifically claims that

the City has failed to produce necessary documents, pay for removed liens or provide

substitute liens, forward payments to ATF, or sell ATF subsequent liens.  These issues are

explicitly covered by Articles VIII, IV, V and XI, and X(G) of the contracts, respectively.

Moreover, ATF alleges that it "has fully performed its obligations under the subject

Contracts," and it has not rescinded the contracts.  Compl. ¶ 23.

       The cases cited by ATF in support of its proposition that it can elect to rescind the

contract on the eve of trial and seek restitution for unjust enrichment are distinguishable.  For

example, in American Underground Engineering, Inc. v. City of Syracuse, the plaintiff's failure

to choose between contract and quasi-contract damages in its motion for summary judgment

did not preclude it from pursuing a rescission theory at trial.  No. 5:00-CV-278, 2011 WL

4809882 (N.D.N.Y. Oct. 11, 2011) (Scullin, S.J.), aff'd, 526 F. App'x 37 (2d Cir. 2013)

(summary order).  However, that case involved "a bona fide dispute regarding the existence

and/or application of a contract, so Plaintiff was never required to elect its remedy." Id. at *3;

see also Goldman v. Simon Prop. Grp., Inc., 58 A.D.3d 208, 220 (N.Y. App. Div. 2d Dep't

2008) ("[W]here there is a bona fide dispute as to the existence of a contract or the

application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of

quasi contract as well as breach of contract . . . .").

Here, the existence of valid written contracts, and their application to the subject

matter at issue, cannot be disputed.  As discussed below, the dispute instead centers on the

definition of contract terms, not the validity or application of the contracts.  Accordingly, the

City's motion for judgment on the pleadings with respect to ATF's unjust enrichment claim will

be granted.

## B.  The Parties' Motions for Partial Summary Judgment

### 1.  Legal Standard

The parties have each moved for partial summary judgment regarding ATF's breach of

contract claim.  The entry of summary judgment is warranted when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

(citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the

suit under the governing law."  Anderson, 477 U.S. at 248; see also Jeffreys v. City of New

York, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4.  The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## 2. **Breach of Contract**

As noted above, if a tax lien qualifies as a "removed lien," it is removed from the list of liens purchased by ATF, and the City must compensate ATF with a refund or replacement lien(s).  As pertinent to the pending motions, a lien qualifies as a removed lien if the relative property "becomes subject to a condemnation action or demolition lien filed by the City, that materially impairs market value at any time prior to, on, or six months after" ATF purchased that lien.[6]  2006 Contract 36; 2008 Contract 65.  The parties' contract dispute centers on

---

[6]  A lien also qualifies as a removed lien if "there is a pending tax appeal or abatement action against the Related Property, which appeal or action was pending at any time prior to or on" the date ATF purchased the lien.  2006 Contract 36; 2008 Contract 64.  The City defines an "abatement action" as an action filed by a property owner seeking to decrease the tax burden on the subject property.  It concludes that a lien is only a removed lien under this provision if a taxpayer had filed such an action prior to or on the date ATF purchased the subject lien.  ATF does not dispute this definition.  ATF clarifies that the reference to "abatement issues"
(continued...)

when a property becomes subject to a "condemnation action" or "demolition lien," thereby triggering the City's obligation to compensate ATF.[7]  Neither term is specifically defined in the contracts.

When interpreting disputed contract terms, a court should "give effect to the intent of the parties as revealed by the language and structure of the contract, and should ascertain such intent by examining the document as a whole."  Peak Dev., LLC v. Constr. Exch., 100 A.D.3d 1394, 1395 (N.Y. App. Div. 4th Dep't 2012).  The contract language should be interpreted in such a manner as to promote the "general or primary purpose" of the overall contract.  Id.  "Typically, the best evidence of intent is the contract itself . . . ."  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004).  Thus, if the contract is "complete, clear and unambiguous on its face," a court must enforce it in accordance with the plain meaning of its terms.  Id. (internal quotation marks omitted).  Conversely, if the contract is ambiguous, a court may consider extrinsic evidence "to ascertain the correct and intended meaning of a term or terms."  Id. at 178 (internal quotation marks omitted).

A contract term is ambiguous if it could be interpreted as suggesting more than one meaning "when viewed objectively by a reasonably intelligent person who has examined the

_____

(...continued)
in the complaint instead refers to notices and orders the City has reportedly issued, directing property owners to remedy some aspect of the subject property.  Therefore, the allegations of "abatement issues" are subsumed within the claims regarding condemnation actions and demolition liens.  Thus, the definition of the term "abatement action" need not be addressed.

[7]  This issue represents only one aspect of ATF's breach of contract claim.  ATF alleges the City has also breached the contracts by:  "displacing ATF's position as first-priority lien-holder on the properties; misrepresenting the value and condition of the properties; failing to disclose the legal status of the properties; diverting sold tax lien payments; improperly assessing the value of liened properties; failing to disclose that many of the purchased liens were defective; failing to provide information requested by ATF; refusing to allow ATF to exercise its Right of First Refusal; and, pursing improper in rem actions."  Compl. ¶ 24.

context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (internal quotation marks omitted).

The parties both claim the terms "condemnation action" and "demolition lien" are unambiguous, though they put forth different interpretations. They cite opposing dictionary entries that support their proffered definitions. The City argues the terms should be given their narrow, legal definitions and asserts that the vast majority of the liens sold to ATF do not qualify as removed liens. ATF maintains that the contract language should be read broadly, and it identifies 382 liens pertaining to sixty-four properties that allegedly constitute removed liens due to actions taken by the City. The parties further dispute whether the City breached the contracts by seeking to collect on unpaid water bills related to properties subject to certain liens.

### a. Condemnation Actions

The City asserts that a "condemnation action" is a judicial proceeding filed by the City seeking to acquire real property for a public purpose (i.e. eminent domain). It claims that since it did not exercise its eminent domain powers or file any such actions related to any of the properties subject to the sold liens, none of the liens have become subject to a condemnation action.

ATF asserts that the term "condemnation action" should be read to broadly include any process of declaring a building unfit for occupancy or habitation. ATF notes that the City served many property owners with Notices and Orders of Demolition ("Notices and Orders") for properties associated with the sold tax liens. It concludes that the Notices and Orders constitute condemnation actions.

ATF's definition of "condemnation action" is unreasonably broad.  While the word "condemnation" certainly incorporates a declaration that a building is unfit for occupancy, the use of the word "action" suggests the parties intended this phrase to have a more narrow meaning than simply <u>any</u> process or conduct taken by the City that may lead to a condemnation of the related property.  The phrase is more reasonably interpreted to mean a formal judicial action initiated by the City.

This interpretation is consistent with other provisions in the contracts.  For example, a sold lien can also become a removed lien if the United States Environmental Protection Agency or New York Department of Environmental Conservation initiates an "enforcement action" against a related property.  2006 Contract 35; 2008 Contract 64.  The use of the word "action" in this context suggests a formal proceeding initiated on behalf of either governmental agency, not simply some conduct by an employee indicating enforcement is imminent.  Similarly, a sold lien can become a removed lien if "the Related Property has become subject to a tax foreclosure action or administrative tax deed procedure by the City." 2006 Contract 36; 2008 Contract 64.  The only logical interpretation of the phrase "tax foreclosure action" in this provision is a formal judicial filing.  Moreover, the parties drew a clear distinction between a "tax foreclosure action" and an "administrative tax deed procedure."  This reflects an understanding that an "action" is not a catchall term that contemplates any administrative procedure.

In sum, ATF's interpretation of the term "condemnation action" is unreasonable.  The City's motion for partial summary judgment will therefore be granted with respect to this contract term.  <u>See</u> <u>CBS Corp. v. Eaton Corp.</u>, No. 07 Civ. 11344, 2009 WL 4756436, at *3 (S.D.N.Y. Dec. 7, 2009) ("[I]f one of the two interpretations put forth by the parties is

unreasonable, the matter is ripe for summary judgment and the Court may construe the Contract as a matter of law."). Accordingly, a condemnation action is a judicial proceeding filed by the City seeking to acquire the real property related to a sold tax lien.

   **b. Demolition Liens**

   According to the parties, the City must file a petition in the state Supreme Court before a structure or property can be demolished. The City may only demolish the property after such a petition is granted. Thereafter, the City may seek to recover the costs of demolition by obtaining judgment from the Supreme Court and filing same in the Onondaga County Clerk's Office.

   The City argues that a property is not "subject to a demolition lien" until this entire process is complete, i.e., the judgment is granted for the costs of demolition. It concludes that, regardless of whether a structure on a subject property has been demolished, a sold tax lien does not become a removed lien pursuant to the contracts unless and until the City is formally granted judgment, which is recorded in the County Clerk's office. The City maintains that it did not obtain such a demolition lien for any of the properties relative to the sold tax liens within the requisite six-month time period after ATF purchased the liens.

   ATF claims that a demolition lien is simply an encumbrance on a property identifying a legal right of the City to enter and demolish the property, lasting until the duty imposed by the encumbrance is removed. It argues that the aforementioned Notices and Orders constitute demolition liens that decrease the market value of a property.

   The parties seem to agree that a "lien" is an encumbrance on a property imposing a

duty on the property owner to take some action or pay some debt.[8]  Their dispute instead centers on whether the Notices and Orders amount to a demolition lien within the meaning of the contracts.[9]

The City's attempt to characterize the Notices and Orders as mere "demolition-related letters" is unavailing.  These documents are printed on "Department of Community Development, Division of Code Enforcement" letterhead, are served upon the property owner by a City official, and impose duties upon that property owner.  Specifically, they indicate that the subject property "has been declared an EMERGENCY in that the condition of the said structure(s) constitutes an immediate danger to the health, safety, and welfare of the general public."  Marini Aff., Ex. 1, ECF No. 37-1.  They further designate the premises as "UNFIT FOR OCCUPANCY" pursuant to City Property Conservation Code § 27-115.  Id.

In the Notices and Orders, the City orders the property owner—pursuant to City Property Conservation Code § 27-116—"to take immediate action to remove and abate [the] hazard" by vacating the premises, demolishing the structure within fifteen days, securing the premises until it is demolished, and removing all debris.  Id.  If the property owner fails to ameliorate the hazard within fifteen days, the City will take "whatever action is necessary to compel compliance with this order."  Id.  Finally, the Notices and Orders advise the homeowner that an administrative hearing has been scheduled with the Division of Code Enforcement to discuss and/or dispute the matter.

---

[8]  This is consistent with the common definition of the term.  See Black's Law Dictionary 1006 (9th ed. 2009) (defining a lien as "[a] legal right or interest that a creditor has in another's property, lasting usu. until a debt or duty that it secures is satisfied").

[9]  The City concedes that, under its own definition of demolition lien, twelve of the subject properties "have demolition liens that would qualify the sold liens for removal pursuant to the Contracts."  Craner Aff. ¶ 10, ECF No. 28-2.

The City's former Demolition Supervisor, Ted Koagel, testified that he regularly caused Notices and Orders to be served on property owners, some of whom then met with him and developed a plan to remediate the problem in lieu of the City taking further legal action or demolishing the structure. Huffman Affirmation, Ex. 2, ECF No. 40, 15–18. According to Koagel, if the property owner or a representative failed to appear at the administrative hearing, a twenty-four hour Notice would be issued and the City would take further action. Such further action would presumably include the filing of a petition in Supreme Court to begin the actual demolition process described above. In short, the language used in the Notices and Orders, coupled with their practical effect on the property, leads to the reasonable conclusion that they are encumbrances on the subject property.

Moreover, ATF makes a compelling argument that the Notices and Orders should be filed with the County Clerk's Office. Indeed, a city has the authority "[t]o adopt a local law or ordinance compelling the repair or removal of any building or structure that, from any cause, endangers the health, safety or welfare of the public." N.Y. GEN. CITY LAW § 20(35). If a city adopts such an ordinance, as the City has done via Property Conservation Code §§ 27-115 and 27-116, it must provide the property owner and all other interested persons with proper notice. Id. § 20(35)(b). The City must also file "a copy of such notice in the office of the county clerk of the county within which such building or structure is located." Id. § 20(35)(d).

Finally, the City's narrow definition of a demolition lien is inconsistent with the underlying intent of this contract provision. The overarching point of a "removed lien" is to compensate ATF for any material decrease in market value, caused by actions of the City, of a property subject to a sold tax lien. The market value of a property is arguably impaired long before the City is formally granted a judgment entitling it to reimbursement for demolition

costs.  The Notices and Orders are therefore encumbrances on the subject property.

In sum, ATF's interpretation of the term "demolition lien" is correct, and the Notices and Orders—which arguably should be filed in the County Clerk's Office—constitute such liens within the meaning of the contracts.

**c.  <u>Unpaid Water Bills</u>**

Article X, section C of the contracts obligates ATF to notify the City of foreclosure actions it intends to commence.  In turn, if it does not object to the initiation of a foreclosure action, the City must provide ATF with evidence of any unpaid water bills related to the subject property.  Pursuant to Article X, section E, ATF shall include any unpaid water bills in those foreclosure actions and remit any payment realized for those water bills to the City.  If the foreclosure action does not result in payment of the unpaid water bills, they remain on the property and are owed to the City.

ATF claims that the City has failed to provide it with documentation related to outstanding water bills, as required by the contracts, thus preventing ATF from including same in foreclosure actions.  ATF suggests that the City instead inserts itself into the foreclosure proceeding and/or subsequent real estate transaction in an attempt to elevate its interest in unpaid water bills to a "super-priority" status over ATF's interest in the tax liens, thereby hindering ATF's ability to obtain and transfer title in fee simple.

The City denies interfering with such proceedings.  Instead, the City blames ATF for failing to properly notify it of pending foreclosure actions.  It further claims that when it receives a request to turn on water service at a particular property, it simply requires all unpaid water bills associated with that property to be paid prior to restoring water service.

ATF does not identify any specific foreclosure proceeding in which the City has

interfered.  Conversely, the City has provided an affidavit from Diane Desormeaux, the Utilities Billing Supervisor in the Department of Water Finance.  Ms. Desormeaux reports that "[t]he City does not appear at foreclosures or sales initiated by Plaintiff and demand that water bills be paid."  Desormeaux Aff. ¶ 3, ECF No. 28-3.

Accordingly, the City's motion for partial summary judgment will be granted with respect to ATF's claim that the City interferes with ongoing foreclosure proceedings.[10]

## IV.  **CONCLUSION**

The indemnification clause in the contracts does not entitle either party to recover attorneys' fees incurred in bringing or defending this action.  Further, as the relationship between the City and ATF is defined by two valid written contracts and ATF's unjust enrichment and breach of contract claims arise from the same factual allegations, the unjust enrichment claim must be dismissed.  Both aspects of the City's motion for judgment on the pleadings will therefore be granted.

The resolution of the parties' opposing motions for partial summary judgment shall guide further discovery related to the various remaining aspects of the breach of contract claims and any settlement negotiations.  Specifically, the term "condemnation action" shall be accorded the definition put forth by the City; to wit, a formal judicial proceeding filed by the City seeking to acquire the real property related to a sold tax lien.  Conversely, ATF's proposed definition of the term "demolition lien" is correct, and the Notices and Orders of Demolition constitute such liens within the meaning of the contracts.  Finally, ATF fails to

---

[10]  It is noted that the City does not appear to have moved for summary judgment on a separate, but related, part of this breach of contract claim; to wit, ATF's allegation that the City violated the contract provision requiring it to provide all necessary documentation related to unpaid water bills.  Therefore, the grant of partial summary judgment in the City's favor is limited to ATF's assertion that the City interferes in foreclosure proceedings in an effort to raise its interest to a "super-priority."

identify any specific foreclosure proceeding in which the City has interfered in an effort to elevate its interest in unpaid water bills over plaintiff's interest in a sold tax lien. That aspect of the breach of contract claim will thus be dismissed.

Therefore, it is

ORDERED that

1. The defendant City of Syracuse's motion for judgment on the pleadings and for partial summary judgment (ECF No. 28) is GRANTED in part and DENIED in part;

2. Plaintiff American Tax Funding, LLC's cross-motion for partial summary judgment (ECF No. 34) is GRANTED in part and DENIED in part;

3. Plaintiff's indemnification claim is DISMISSED to the extent ATF seeks attorneys' fees pursuant to the indemnification clause in the contracts;

4. Plaintiff's unjust enrichment claim is DISMISSED;

5. The contract term "condemnation action" is interpreted as a formal judicial proceeding filed by the City seeking to acquire the real property related to a sold tax lien;

6. The contract term "demolition lien" is interpreted as an encumbrance on a property imposing a duty on the property owner to take some action or pay some debt and specifically includes the identified Notices and Orders of Demolition; and

7. Plaintiff's breach of contract claim is DISMISSED to the extent it alleges the City interfered with foreclosure and/or subsequent real estate proceedings in an effort to obtain payment for outstanding water bills.

IT IS SO ORDERED.

United States District Judge

Dated:  August 29, 2014
        Utica, New York.