UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMERICAN TAX FUNDING, LLC,

                Plaintiff,

       -v-                         5:12-CV-0290
                                   (DNH/DEP)

CITY OF SYRACUSE,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                       OF COUNSEL:

CAMARDO LAW FIRM P.C.           JOSEPH A. CAMARDO, JR., ESQ.
Attorneys for Plaintiff              JUSTIN T. HOFFMAN, ESQ.
127 Genesee Street
Auburn, NY 13201

HARRIS, BEACH LAW FIRM        BRENDAN M. PALFREYMAN, ESQ.
Attorneys for Defendant          LAUREN H. SEITER, ESQ.
333 West Washington Street      DAVID M. CAPRIOTTI, ESQ.
Suite 200
Syracuse, NY 12205

CITY OF SYRACUSE LAW DEPARTMENT  SHANNON M. JONES, ESQ.
Attorneys for Defendant
300 City Hall
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM, DECISION and ORDER

## I. INTRODUCTION

Presently under consideration are two motions for partial summary judgment filed by

plaintiff American Tax Funding, LLC ("ATF"), a Florida limited liability company. See ECF Nos.

58, 86. Defendant City of Syracuse, New York (the "City"), a municipal corporation, opposes both motions. See ECF Nos. 62, 89.

## II. FACTUAL BACKGROUND

The following facts are gleaned from the parties' submissions, including the statements submitted pursuant to Northern District Local Rule 7.1.

ATF is a private company that specializes in purchasing liens from municipalities across the nation. It then seeks to collect on and profit from the outstanding liens. ATF and the City entered into two contracts, dated August 2, 2006 and January 31, 2008. See Complaint, ECF No. 1-1, Ex. A, 32-59 ("2006 Contract"), Ex. A, 61-87 ("2008 Contract", and together with the 2006 Contract, the "Contracts"). Pursuant to the Contracts, the City agreed to sell certain delinquent tax liens to ATF. In turn, ATF secured the right to collect and, if necessary, foreclose on property associated with those liens as well as purchase subsequent liens. Combined, the Contracts contemplated over twelve million dollars in tax liens.

Pursuant to Article I of each Contract, a "removed lien" means:

. . . any Tax Lien(s) listed on the Report which may be removed from Schedule A by the City or by the [plaintiff], as indicated below, for which the Buyer shall receive compensation as provided in Article IV of this Agreement, for one or more of the following reasons . . .

See ECF No. 1-1, at 35, 64. The Contracts then list approximately fifteen reasons a sold tax lien could be removed. In subsection (K) of such definition, a sold tax lien may be considered a removed lien when "it is reasonably determined by the [plaintiff] that the Related Property was improperly assessed with respect to any delinquent tax secured by such Tax Lien". Id. at 36, 65. Further, in subsection (L) of the definition of "Removed Lien", each Contract provides that a sold tax lien may constitute a removed lien when "any Related Property becomes subject to a

condemnation action or demolition lien filed by the City, that materially impairs market value at any time prior to, on or six months after the Closing Date." Id. at 36, 65.

Article IV of each Contract provides, in pertinent part, that:

If the [plaintiff] determines that any Sold Tax Lien shall be removed as a Removed Lien pursuant to the terms of the Agreement, the [plaintiff] shall so notify the City and shall identify the reason for such removal. Any Sold Tax Lien so identified by the Buyer to constitute a Removed Lien shall be deleted from Schedule A.

If any Sold Tax Lien for which the Purchase Price has been paid to the City shall thereafter be removed from Schedule A as provided in this Article IV or in the definition of "Removed Liens", the [plaintiff] shall be entitled to receive from the City compensation equal in value to the Aggregate Tax on the Removed Lien as of the date the [plaintiff] receives such compensation . . .

Id. at 39, 68. In Article VI of each Contract, defendant represented and warranted to ATF that "[e]ach Sold Tax Lien constitutes a valid enforceable first lien against the Related Property, subject to no prior liens or encumbrances retained by the City (aside from the current tax obligation), and enjoying such first priority with respect to any other liens or encumbrances as is accorded by the Act". Id. at 42, 71.

In its Complaint, ATF alleges that many of the tax liens it purchased turned out to be flawed and/or constituted removed liens, thereby triggering the City's obligation to compensate ATF. See Complaint, ECF No. 1.

In a prior Memorandum, Decision and Order, dated August 29, 2014 (the "August 29, 2014 Decision"), this Court determined that the contract term "condemnation action" meant a formal judicial proceeding filed by the City seeking to acquire the real property related to a sold tax lien and that the contract term "demolition lien" meant an encumbrance on a property imposing a duty on the property owner to take some action or pay some debt and specifically includes the identified Notices and Orders of Demolition. See August 29, 2014 Decision, ECF No. 51.

Pursuant to the City of Syracuse Conservation Code, the City may notify a property owner of its intent to designate a property as unfit for occupancy pursuant to a 15 day notice and direct such owner to remediate the property to bring it into compliance (an "Unfit Notice"). See City of Syracuse Code or Ordinances 27-115, available at https://www.municode.com (last visited March 18, 2016). The City may also direct a property owner to demolish an unsafe structure pursuant to a 15 day notice and order. (an "Demolition Notice" and together with the Unfit Notice, the "Notices and Orders"). Id. If a Demolition Notice is not complied with by the property owner, the City may seek an order of demolition in New York State Supreme Court and seeks to recover the costs of such demolition from the property owner.

After the August 29, 2014 decision, ATF states that it researched which liens were subject to a Notice and Order before or within 60 days of the closing dates of the Contracts. On December 23, 2014, it submitted a demand for payment to the City in a total amount of $1,410,857.16. After the City refused to provide compensation, plaintiff made the motions for partial summary judgment presently under consideration.

## III. DISCUSSION

### (a) Summary Judgment Standard.

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. PRO. 56(c); Richardson v. Selky, 5 F.3d 616, 621 (2d Cir. 1993). The party moving for summary judgment has the burden to establish "'that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.'" Bowen v. National R.R. Passenger Corp., 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (quoting Rodriquez v. City of New York, 72 F.3d 1051,

1060-61 (2d Cir. 1995)).  A fact is "material" for purposes of this inquiry if it: "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A party opposing summary judgment "'may not rest upon the mere allegations or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'"  Id. (quoting First Nat'l Bank of Ariz. v. Cities Svcs.Co., 391 U.S. 253, 288 (1968)).  Those specific facts must be supported by "citing to particular parts of materials in the record."  FED. R. CIV. PRO. 56(c)(1)(A).  "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

*(b) Plaintiff's February 13, 2015 Motion.*

ATF argues that as a result of the August 29, 2014 Decision, it is entitled to partial summary judgment for the removal of numerous sold tax liens which it alleges were subject to a Notice and Order at the time the Contracts were entered into or within sixty days of such Contract.  Plaintiff contends that the service of a Notice and Order constitutes a demolition lien and therefore plaintiff may remove the lien pursuant to Article IV of each Contract and City must compensate ATF with a refund or replacement lien.

The City argues that ATF's motion should be denied because: (i) the relief sought by ATF is barred by the law of the case doctrine, (ii) ATF has failed to demonstrate that any of the Notices or Orders resulted in a material impairment of the market value of such property and (iii)

the Contracts do not entitle ATF to remove liens in its sole discretion.  <u>See</u> Def.'s Mem. Supp. Summ. J., ECF No. 62-1.

*(i) Law of the Case Doctrine.*

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>DiLaura v. Power Authority of State of N.Y.</u>, 92 F.3d 73, 76 (2d Cir.1992). The doctrine "expresses the general practice of refusing to reopen what has been decided." <u>Slotkin v. Citizens Cas. Co. of New York</u>, 614 F.2d 301, 312 (2d Cir. 1979).  However, while courts are understandably reluctant to revisit issues previously decided, the doctrine does not limit the court's authority to do so. See <u>DiLaura</u>, 92 F.3d at 76.

The City contends that ATF previously made a motion for summary judgment seeking to remove certain liens pursuant to the terms of the Contracts, and that while the Court granted plaintiff's motion is part, it denied plaintiff's request to remove the liens as a matter of law. Defendant asserts that plaintiff should not be permitted another opportunity to remove such liens. However, the underpinning of the plaintiff's present summary judgment motion result from the August 29, 2014 determination that the Notices and Orders constituted encumbrances for the purposes of the "Removed Lien" definition of the Contracts and plaintiff's subsequent endeavors to identify such Notices and Orders.  As a result, while the relief sought by plaintiff might be the same, i.e. removal of the liens, the issues previously decided are not necessarily those which are at issue now.    Therefore,  the  law  of  the  case  doctrine  is  inapplicable.

*(ii) Materiality Requirement.*

Under the Contracts, a lien qualifies as a removed lien if the relative property "becomes subject to a condemnation action or demolition lien filed by the City, that materially impairs

market value at any time prior to, on, or six months after" ATF purchased such lien. See ECF No. 1-1, at 36, 65. Pursuant to the August 29, 2014 Decision, service of a Notice and Order with regards to a property constitutes a demolition lien. Defendant argues that plaintiff has failed to show that the individual Notices and Orders it seeks partial summary judgment upon have materially impaired the market value of such property.

ATF first argues that evidence of material impairment to market value is not required as subsection (L) of the "Removed Lien" definition contains no conditional language. See Pl.'s Reply Mem., ECF No. 70, at 5. However, the language of the clause is unambiguous - a demolition lien is only considered a removed lien under the definition if it materially impairs the market value of such property. To read the clause otherwise would render the materiality language superfluous and meaningless.

Next, ATF contends that by definition, demolition of a property is a material impairment to the market value of the property. Id. While the Court may agree, no evidence of demolition of the subject properties is provided in the present case. The Unfit Notices designates the property as unfit for occupancy and directs the occupants to immediately vacate the premises and cure the violations. If the property maintenance violations were in fact cured as a result of an Unfit Notice, such notice might actually lead to a material improvement in the market value of such property. The Demolition Notices direct the property owner to demolish the unfit structure, however, it does not constitute evidence that such demolition actually occurred, by the property owner or by the City. Further, review of the spreadsheet provided by plaintiff shows that while many of the Demolition Notices were sent prior to the purchase by plaintiff, many of the Demolition Notices were sent outside the six month window provided by the Contracts and that

only a prior Unfit Notice was provided concerning such property. See Affidavit of Matthew Marini, Ex. 1, ECF No. 58-5.

The issue of materiality is a mixed question of law and fact, and only if "reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law by summary judgment." CMEG Nymex Holding Inc. v. Optionable, Inc., 2012 WL 3683560 at * (S.D.N.Y. Aug. 24, 2012) (quoting TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976)).

In the August 29, 2014 Decision, this Court found that "[t]he market value of a property is arguably impaired long before the City is formally granted a judgment entitling is to reimbursement for demolition costs." See ECF No. 51, at 17-18. That opinion has not changed. The Notices and Orders may have resulted in a material impairment of market value of the underlying properties, however, such possibility is not proper grounds to decide the issue on a summary judgment motion. As a result, the issuance of a Notice and Order concerning a particular property does not, as a matter of law, constitute a material impairment in the market value of the property. Plaintiff has not otherwise provided evidence that a condemnation action or demolition lien materially impaired the market value of the particular properties. Therefore, a genuine issue of material fact exists as to whether the Notice and Order resulted in a material impairment in the market value of the properties related to the sold tax liens.

*(iii) Discretion to Determine Materiality & Remove Liens.*

Plaintiff further argues that it alone has discretion to determine whether the Notices and Orders have had a material impact on market value. See Pl's Mem. Supp. Summ. J., ECF No. 58-1, at 15-17. To support its argument, it points to the language in Article IV of each Contract, which permits the plaintiff to determine which liens should be removed and notify defendant of

such removal.  It then contends that Article IV permits plaintiff to remove such liens at its own discretion or in accordance with the "Removed Liens" definition.   Plaintiff asserts that a requirement to make an independent showing of material impairment for each property would have resulted in a substantial expense and delayed the closing process and therefore could not have been the intent of the parties.

In reviewing a written contract, the Court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use. See Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992).  Where a contract is unambiguous, that is, where its words convey a definite and precise meaning upon which reasonable minds could not differ, its interpretation can be determined as a matter of law. See id. at 429. Where, however, reasonable minds could differ on the meaning of the language used, see Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir.1996), the meaning of the words becomes an issue of fact if there is relevant extrinsic evidence of the parties' actual intent. See Seiden, 959 F.2d at 428.   "A contract is not ambiguous simply because the parties have urged conflicting interpretations." Reyes v. Metromedia Software, Inc., 840 F. Supp. 2d 752, 755 (S.D.N.Y.2012).

Reviewing the Contracts, reasonable minds could differ regarding the level of deference provided to ATF to remove liens after the closing date of the Contracts. The language of Article IV  is reasonably susceptible to the construction placed on it by the City, i.e. that there was both a pre-closing removal procedure where plaintiff had substantial deference to remove lien as it saw fit and a post-closing removal procedure governed to the "Removed Lien" process whereby plaintiff did not have sole discretion. See ECF No. 1-1, at 39, 68.  A reasonable fact finder could conclude that the first paragraph of Article IV, which permits plaintiff to remove liens that are "less likely collectible",  applies only to pre-closing removals.  The second paragraph,

which expressly references the "Removed Lien" definition would therefore govern post-closing lien removal.

This conclusion is supported by the introductory language of the "Removed Lien" definition, which indicates that tax liens may be removed "by the City or by the [plaintiff], as indicated below" and lists the fifteen reasons for removal. Some reasons require that the condition be "reasonably determined by the [plaintiff]" (subsections I & K) and another permits the City to remove such liens (subsection N). Id. at 36, 65. Other are factual matters that could be observed and theoretically removed by either party.

If ATF's interpretation of the Contracts is accepted, that it maintained sole discretion to determine when a lien can be removed, such introductory language of the "Removed Lien" definition and the reasonable determination requirement imposed by some of the subsections would be rendered meaningless. See Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.").

The intentions of the parties cannot be ascertained from the face of the Contracts. Each party points to extrinsic evidence which it claims supports its view, which is relevant to the issue of the parties' intent. Accordingly, questions of fact exist regarding the meaning of Article IV and the "Removed Liens" definition of the Contracts, precluding the granting of summary judgment with respect to this particular request.

*(iv) Representation and Warranties.*

Lastly, ATF contends that the service of the Notices and Orders rendered the City's representations and warranties false. See Pl.'s Memo, ECF No. 58-1, at 21.

In subsection (G)(iv) of Article VI of each Contract, the City represented and warranted that "[e]ach Sold Tax Lien constitutes a valid enforceable first lien against the Related Property, subject to no prior liens or encumbrances retained by the City (aside from the current tax obligation), and enjoying such first priority with respect to any other liens or encumbrances as is accorded by the Act." See ECF No. 1-1 at 42, 71. Article XIV of each Contact provides that the City shall indemnify ATF for all losses resulting from, among other things, any material inaccuracy or misrepresentation of any representation or warranty. Id. at 52, 81.

The City contends that (i) the representations provided by the City only applied to monetary liens and encumbrances, (ii) the Notices and Orders could not enjoy priority over a sold tax lien as they are monetary obligation and require no payment of funds and (iii) that such representations were made upon information and belief and therefore are not absolutes. See Def.'s Mem. Opp'n Summ. J., ECF No. 62-1, at 22-25.

Under New York law, breach of an express warranty requires: (1) the existence of an express warranty; (2) material breach of the warranty; (3) damages proximately resulting from the breach; and (4) justifiable reliance on the warranty. See Metromedia Co. v. Fugazy, 983 F.2d 350, 360 (2d Cir.1992). "[A]ffirmative representations" can create express warranties. See Symphony Fabrics Corp. v. Creations by Aria, Inc., 111 A.D.2d 650, 651 (1st Dept.1985). An "express warranty is as much a part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled." CBS, Inc. v. Ziff–Davis Pub. Co., 75 N.Y.2d 496, 503 (1990). A party seeking indemnification under the warranty need only

"[establish] that the warranty was breached." Id. at 504, see also Ainger v. Michigan Gen. Corp., 476 F. Supp. 1209 (S.D.N.Y.1979).

In the present case, it is not in dispute that the parties entered into the Contracts which contained an express warranty by the City concerning the absence of prior liens or encumbrances on the tax liens sold to ATF. Based upon the August 29, 2015 decision, the Notices and Orders constituted encumbrances upon such tax liens.

Therefore, the Court finds that the City breached its warranty concerning any sold tax lien for which a Notice and Order had been issued for the related property prior to the Closing Date of the relevant Contract. Further, such warranty was a bargained-for term of the Contracts. Accordingly, there is no genuine issue of material fact with respect to defendants' liability and plaintiff is entitled to judgment as a matter of law. However, the damages determination will not be controlled by Article IV's requirement that the City compensate ATF for removed liens, rather by the indemnification provision of each Contract. Defendant is therefore liable to indemnify plaintiffs, under New York common law, for all damages proximately caused by the breach to the extent such damages are proven at trial. See CBS, 75 N.Y.2d at 503–06; Metromedia Co. v. Fugazy, 983 F.2d 350, 360 (2d Cir.1992).

*(c) September 8, 2015 Motion.*

In its September 8, 2015 motion for partial summary judgment, ATF seeks to remove tax liens on the grounds that the underlying properties were improperly assessed. See Pl.'s Mem. Supp. Summ. J., ECF No. 86-12.

Defendant contends that in order to remove a lien due to an improper assessment under the Contracts, plaintiff must demonstrate that the related property was improperly assessed at the time the delinquent tax arose, not at some future point in time. See Def.'s Mem.

Opp'n Summ. J., ECF No. 89-12 at 4.  Defendant alleges that plaintiff has only alleged that such assessments were only improper at random times, often years after the Contracts were signed.

Pursuant to Section (k) of the definition of "Removed Lien" contained in each Contract, a sold tax lien may be removed when "[i]t is reasonably determined by the Buyer that the Related Property was improperly assessed with respect to any delinquent tax secured by such Tax Lien." See ECF No. 1-1, at 36, 65.  The unambiguous language of subsection (k) of the "Removed Lien" definition does provide that for a lien to be removed, there must be a reasonable determination of improper assessment with respect to the particular delinquent tax supporting the lien.    Plaintiff attempts to demonstrate that the properties were improperly assessed by numerous methods.  These include that: (i) the underlying property was the subject of a Notice and Order, (ii) certain properties were assessed as having a structure but did not in fact have one, (iii) a later Broker's Price Opinion obtained by ATF evidenced a substantially lower value for certain properties, (iv) ATF successfully challenged the assessed values of certain properties, (v) a number of properties experienced a decrease in assessed value of more than 25% and (vi) a number of properties appear to have been eliminated from the assessment rolls.  See Pl.'s Mem. Supp. Summ. J., ECF No. 86-12.

(i) *Notice and Orders*.  Plaintiff argues that if a structure was subject to a Notice and Order, it presumably was in poor condition and therefore was likely to have had an overly inflated assessment.  See Pl.'s Mem., ECF No. 86-12, at 23.  To support its position, plaintiff has submitted approximately 912 pages of printout from the City Code's Office concerning certain properties.  See Marini Aff., Ex. 2, ECF Nos. 86-4, 5.

However, the evidence submitted by ATF is insufficient to meet its burden at the summary judgment stage.  The materials submitted are not self explanatory and do not demonstrate that the property was improperly assessed at the time the delinquent tax was imposed. For example, a log of activity for 1110 Carbon Street indicates that a 15-day demolition

letter was sent on "5/07/28" and that the property was demolished on "9/08/07". <u>See</u> Marini Aff., Ex. 2, ECF No. 86-4 at 7-8. As the tax liens purchased by ATF for 1110 Carbon Street were for the tax years 2000 through 2005, besides being inconsistent, the printout appears to show that the structure was demolished two years after the imposition of the delinquent tax and after the tax lien was purchased by plaintiff. <u>See</u> Marini Aff., Ex. 1, ECF No. 86-3. While the demolition may have lead to a later reduction in the assessed value of the property, the Notices and Orders do not evidence that such properties was improperly assessed at the time of the tax delinquency. An individualized analysis of the assessed value of each property would be required and plaintiff does not provide the assessed values for such properties in support of its motion. Plaintiff's belief that the structures must have been in poor condition prior to the structure's demolition is insufficient to show that the particular assessed value was improper at the time of the delinquent tax was imposed.

Further, it is not apparent in ATF's supporting documentation that other properties were actually demolished and that they were only issued codes violations or an Unfit Notice. Such issues would not be *per se* evidence that a property was improperly assessed. As previously discussed, a material issue of fact remains as to whether Notices and Orders had a material impact on the market value of such property.

ATF also contends that it is not required to prove that the assessments were improper, but only has to demonstrate that it was reasonable in determining that the assessment was improper. <u>See</u> Pl.'s Reply, ECF No. 93, at 10. However, without an individualized analysis whether an assessment was improper, it is impossible at this stage in the proceeding to evaluate whether ATF's determination was reasonable. For example, with respect to 1110 Carbon Street, the fact that the structure was demolished at a point significantly after the imposition of the delinquent taxes does not per se mean the prior assessment was improper. A determination by ATF to the contrary based solely on such fact may be unreasonable.

For the above reasons, plaintiff has failed to demonstrate its entitled to summary judgment and a material issue of fact exists as to whether the issuance of a Notice and Order resulted in the properties being improperly assessed at the time the tax delinquency was imposed.

(ii) *Absence of Structures.*  ATF also contends that two properties, 244 Lilac Street and 127-129 Temple Place[1], were assessed as having structures on them, but no structures existed on such properties in February 2006.  The tax liens which were purchased by ATF for such properties represented tax years 1999 through 2002 and 2000 through 2002, respectively.  See Marini Aff., Ex. 1, ECF No. 86-3.  Plaintiff has not submitted evidence as to when the structures were removed or any evidence that the assessments were improper at the time the delinquent tax was imposed.  As a result, the evidence that plaintiff has submitted is insufficient to support the granting of summary judgment in its favor.

(iii) *Broker's Price Opinions.*  Next, ATF asserts that many of the Broker's Price Opinions it obtained for various properties, with inspection dates in 2008 and 2009, were substantially lower than the assessed value of corresponding properties.  See Pl.'s Mem., ECF No. 86-12, at 24.  However, reviewing the materials that plaintiff has submitted, it does not appear that plaintiff has stated what the assessed value for such property was at the time the delinquent tax was imposed and has not detailed how such opinions represent materially lower assessed values.  See Marini Aff., Ex. 4, ECF No. 86-7.  Further, the materials do not provide evidence that the assessed value at the time the delinquent tax was imposed was improper as the opinions were rendered in 2008 and 2009, a significant period of time after the tax liens were imposed.

In addition, the opinions are offered by ATF through the affidavit of Mr. Matthew Marini,

---

[1]  While plaintiff does not individually discuss these properties in its Memorandum, the information contained in Exhibit 2 to the Marini Affidavit only references these two properties.  See Marini Aff., Ex. 2, ECF No. 86-6.

the President and CEO of plaintiff.  Mr. Marini's affidavit does not establish that he is qualified to testify as to the property valuations.  Opinions offered by other individuals through Mr. Marini's affidavit or Mr. Marini's belief and general experience are not sufficient to meet one's burden on summary judgment.

Therefore, plaintiff has failed to provide admissible evidence to support the granting of summary judgment in its favor on the basis of the submitted Broker's Price Opinions.

(iv) *Reduced Assessment.*  ATF contends that it successfully challenged the assessed values of approximately ten properties and that such reduced assessment provides it with a reasonable basis to conclude that the corresponding assessments were improper.  See Pl.'s Memo, ECF No. 86-12, at 24.   In support of its motion, plaintiff has provided notices from the City, each dated March 31, 2009, which  state that the proof presented by plaintiff was adequate to demonstrate the requested reduction in assessed value.  See Marini Aff., Ex. 5, ECF No. 86-8. However, plaintiff fails to articulate the grounds such reduction in assessed value was predicated upon and that such grounds existed at the time the tax delinquency was imposed, which again were numerous years before the reduction in assessment.  As a result, the evidence submitted in insufficient to support the granting of summary judgment in plaintiff's favor.

(v) *25% Reduction in Assessment.*       ATF asserts that many of the properties experienced a significant reduction of more than 25% in assessed value at some point and that therefore, ATF reasonably determined that the assessment was improper at the time the delinquent tax was imposed.  See Pl.'s Memo., ECF No. 25.  For example, plaintiff submits printouts demonstrating that the assessed value of the property located at 1109 Carbon Street was $48,100.00 in 2008 but was reduced to $27,000.00 in 2009.  See Marini Aff., Ex. 6, ECF No. 86-9, at 1-3.  The tax liens purchased by ATF relating to the property at 1109 Carbon Street represented tax years 2000 through 2005.  See Marini Aff., Ex. 1, ECF No. 86-3.

However, ATF provides no information as to how the previous assessments were improper. As previously noted, an intervening event occurring after the assessment, such as a demolition or a fire, could be a legitimate cause of a decrease in assessment. Such intervening event would not render the City's prior assessment improper. While ATF asserts that it was a reasonable determination on its part to infer the assessments were improper based upon these significant reductions in assessed value, without an individualized evaluation of the assessment reduction, a material issue of fact exists as to whether such determination was reasonable. Therefore, plaintiff's request for summary judgment must be denied.

(vi) *Removal from Assessment Rolls.* Lastly, ATF argues that it has been unable to locate seven properties from the City's assessment roles and therefore believes that the City has removed such properties from the assessment rolls, rendering plaintiff's tax liens worthless. It therefore contends that such properties were improperly assessed. See Pl.'s Mem., ECF No. 86-12, at 21.

The City asserts that ATF has failed to support its argument that such properties were improperly assessed and notes that at least one property was not located due to a street name change. Without more information with regards to why the properties were allegedly removed from the assessment rolls, it is impossible to determine whether the assessments were improper at the time the delinquent taxes were imposed. As a result, plaintiff has not met its burden to establish that no material issue fact exist on this ground.

## IV. CONCLUSION

For the reasons discussed above, ATF is entitled to summary judgment with regards to the City's breach of its representations and warranties concerning prior encumbrances on the sold tax liens. However, material questions of fact exist concerning ambiguous provisions of the Contracts which preclude the granting of partial summary judgment in favor of plaintiff.

Therefore, it is ORDERED that:

1.  Plaintiff's February 13, 2015 partial motion for summary judgment (ECF No. 58) is **GRANTED** in part and **DENIED** in part, as follows;

A.  Plaintiff is **GRANTED** judgment as a matter of law and defendant is liable to the plaintiff for breach of its representations and warranties contained in Article VI, subsection (G)(iv) of each Contract with respect to any sold tax lien for which a Notice and Order had been issued for the underlying property prior to the relevant Closing Date of such Contract;

B. All other relief requested pursuant to plaintiff's February 13, 2015 partial motion for summary judgment (ECF No. 58) is **DENIED**; and

2.  Plaintiff's September 8, 2015 partial motion for summary judgment (ECF No. 86) is **DENIED** in its entirety.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  March 24, 2016
         Utica, New York

The parties are encouraged to settle this matter so that further judicial intervention is unnecessary.